IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT McCURRY, et al., | |
| Plaintiffs, | 8:08CV448 |
| v. | MEMORANDUM AND ORDER |
| JERALD SWANSON, et al., | |
| Defendants. | |

This matter is before the court on motion to dismiss, Filing No. 20, of defendants'[1] Jerald Swanson, Robert Wondra, Paul Latchar, Paul Milone, Brett Becker, Ryan Sedlacek, Edith Anderson, and the City of Omaha, for failure to state a claim in paragraphs two through 18 of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants contend that this court does not have jurisdiction over an action against a political subdivision or its employees under Neb. Rev. Stat. § 20-148; and the defendants also argue that the state law allegations really allege claims for assault, battery, trespass, false imprisonment or outrage which are barred by the provisions of Neb. Rev. Stat. § 13-901 et seq., and § 13-910(7) of the Nebraska Political Subdivisions Tort Claims Act, and thus the court has no jurisdiction over those claims.

According to the allegations in plaintiffs' complaint, on or about July 24, 2007, a shooting occurred near plaintiffs' house. Filing No. 1. Plaintiffs allege that defendants falsely accused them of hiding the suspects, searched their house without permission, and then searched their drawers and other personal property, none of which was related to the suspects. *Id*. Then, on August 2, 2007, plaintiffs allege defendants returned with a

---

[1] Defendant Richard Martinez has not been served and no response is being made on his behalf.

"defective search warrant" as the warrant did not describe the property to be seized. *Id*. The United States Attorney's Office later dropped the charges against McCurry regarding the gun seized on that day, and plaintiffs contend the charges were dropped because of the defective warrant. Plaintiffs further contend that while executing this illegal search warrant, the defendants knocked down their front door and had a SWAT team of approximately 50 members of the Omaha Police Department throwing people to the ground, destroying personal items, and handcuffing plaintiff Robert McCurry and his two adult guests for three hours. Plaintiffs state that as the police entered the house, defendant Bremer stated, "you should have let me search your fucking house when I was here before." *Id*. at 3. According to plaintiffs, defendants then ripped holes in the wall, destroyed glass tables, and allowed a three-year-old child to walk around in the glass, tore up family pictures, made inappropriate comments, scratched an antique buffet and ransacked the house. *Id*. at 3-4.

Prior to this search, plaintiffs contend they had called Officer Ritchie Martinez a number of times to give him information about gang activities in a park close to his house. They had also complained to Officer Gonzalez about police brutality of minors in the neighborhood. Plaintiffs believe these complaints contributed to the police behavior while searching the house. Additional retaliation, according to plaintiffs, included superiors telling their foster son, a police officer, to stay away from the plaintiffs and later terminating him; plaintiff Melanie McCurry being pulled over by Officer Mahoney; the parties' son Aaron being verbally abused at school in the fall of 2007 where he was told that the officers knew what was going on in his house and he was going to turn out just like his older brother; and the officers telling the plaintiffs that if something happens at your house to not call the

police. *Id*. at 4. Plaintiffs also assert that prior to the search, defendants provided a false police report to the State of Nebraska's Child and Protective Services and to Health and Human Services stating that plaintiff Robert McCurry worked in a bar and used drugs. Child Protective Services wrote a letter stating these allegations were unfounded. *Id*. at 5.

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 n.3. (2007) (*quoting* Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* — U.S. —, —,129 S. Ct. 1937, 1940 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully.).

*Twombly* is based on the principles that (1) the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal,* 129 S.Ct. at 1940-41. Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* at —, 129 S. Ct. at 1950. Accordingly, under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 555; *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Twombly,* 550 U.S. at 558; *Iqbal*, — U.S. at —, 129

4

S. Ct. at 1950 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'").

The complaint identifies Neb. Rev. Stat. §20-148 as the statutory support for the state constitutional and state law claims. That statute reads:

> (1)  Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.
>
> (2)  The remedies provided by this section shall be in addition to any other remedy provided by Chapter 20, Article I, and shall not be interpreted as denying any person the right of seeking other proper remedies provided thereunder.

Defendants contend that the statute clearly exempts political subdivisions from civil remedies for any deprivation of state constitutional and statutory rights. *McKenna v. Julian and the City of Omaha,* 763 N.W.2d 384, 391 (Neb. 2009) (Supreme Court rejected this statute as a basis for claims stating "unlike § 1983, [§ 20-148] explicitly prohibits actions based on constitutional violations against a political subdivision. This only provides further evidence that our Legislature has not intended to waive sovereign immunity for implied causes of action under our constitution.")  Defendants argue that Nebraska law clearly states that § 20-148 is a procedural statute that does not confer any independent substantive rights. *Goolsby v. Anderson,* 549 N.W.2d 153, 157 (Neb. 1996).  Further, argue defendants, the courts have held that § 20-148 is limited to private acts of discrimination by private employers. *Wiseman v. Keller,* 358 N.W.2d 768, 771 (Neb.

5

1984); *Sinn v. City of Seward*, 523 N.W.2d 39, 50 (Neb. App. 1994); *Ritchie v. Walker Mfg. Co.*, 963 F.2d 1119, 1122-23 (8th Cir. 1992) (§ 20-148 does not create a new cause of action but provides a civil remedy for constitutional or statutory rights, such as allowing a bypass of the Equal Employment Opportunity Commission).

With regard to § 20-148, plaintiffs claim that this court should not dismiss the constitutional violations at this point in the case. Plaintiffs argue that they have stated a claim for purposes of the 12(b)(6) motion and that defendants can raise this claim at a later proceeding, such as a summary judgment motion. Plaintiffs further argue that even though the city is immune for the intentional acts of its employees, the individual defendants are not immune. Plaintiffs contend that this question is a mixed one of law and fact and not ready for decision at this time.

The court disagrees. There is no showing on the face of the complaint that plaintiffs have a cause of action under § 20-148. This section specifically exempts any political subdivision from coverage. The court agrees with the defendants that Neb. Rev. Stat. § 20-148 bars the state law causes of action against these defendants After reviewing the relevant law as applied to the arguments of the parties, the court finds the motion to dismiss the § 20-148 claims must be granted. The statute clearly exempts political subdivisions and their employees from civil remedies for any deprivation of constitutional and statutory rights. *McKenna*, 763 N.W.2d at 390-91. Accordingly, the court will grant the motion to dismiss the § 20-148 cause of action.

With regard to the Nebraska Political Subdivisions Tort Claims Act, the court agrees with the defendants that the only way plaintiffs can bring a state law claim against the city or its employees is through this act, as suits can only be brought to the extent permitted by

the Act. There is a presumption in favor of sovereign immunity. *McKenna*, 763 N.W.2d at 390. Section 7 states:

> The Political Subdivisions Tort Claims Act . . . shall not apply to:
>
> . . . .
>
> (7) Any claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; . . . .

Neb. Rev. Stat. § 13-910(7). Defendants argue that all state law claims raised by the plaintiffs are therefore barred. *See Webber v. Andersen*, 187 N.W.2d 290, 293 (Neb. 1971) (supporting governmental immunity under § 13-910(7)). The same is true if these acts are viewed as intentional torts. *Johnson v. State*, 700 N.W.2d 620, 625 (Neb. 2005) (intentional tort exception applies to bar action). Plaintiffs agree that the city is immune for the intentional acts of its employees but argues the claims against the individuals should proceed at this time.

The court finds that the state law claims set forth in the complaint are based on the officers' alleged wrongful and intentional behavior and show of their authority granted by virtue of their employment as police officers. Accordingly, all of plaintiffs' state law claims are barred by Section 13-910(7), which expressly prohibits any claim arising out of such behavior from being alleged against a Nebraska municipality or its employees. Although the plaintiffs try to some extent to rename their claims as trespass or outrage, the court finds the claims arising out of any of the listed conduct cannot be reamed so as to try and acquire jurisdiction. These allegations clearly fall within the area prohibited by § 13-910(7). The court finds the state law claims are not permitted under the Nebraska Political Subdivisions Tort Claims Act and will grant the defendants' motion to dismiss in this regard.

Defendants' motion to dismiss state law claims alleged under the Nebraska Political Subdivisions Tort Claims Act and Neb. Rev. Stat. § 20-148 will be granted. This case will proceed on the claims pursuant to 42 U.S.C. § 1983.

THEREFORE, IT IS ORDERED that defendant's motion to dismiss, Filing No. 20, is granted as set forth herein.

DATED this 8th day of September, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge