IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT McCURRY, et al., | |
| Plaintiffs, | 8:08CV448 |
| v. | |
| JERALD SWANSON, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the court on the parties' cross-motions for partial summary judgment, Filing No. 63 and Filing No. 66. This is an action for deprivation of rights under 42 U.S.C. § 1983, in connection with an allegedly illegal search by Omaha police officers of the plaintiffs' home. Plaintiffs Robert, Melanie and Christopher McCurry (hereinafter "the McCurrys") move for summary judgement in their favor on the issue of the validity of the search warrant at issue. Defendants Edith Andersen, Brett Becker, Paul Latchar, Paul Milone, Ryan Sedlacek, Jerald Swanson, Robert Wondra also move for summary judgment in their favor on that issue, but concede that there are genuine issues of material fact with respect to the reasonableness of the search. The defendants also argue that they are entitled to qualified immunity and contend there is no evidence to support municipal liability against the City of Omaha.[1]

I. BACKGROUND

In their complaint, the plaintiffs allege that on August 2, 2007, Officer Swanson and a team of officers entered and searched their house. Filing No. 1, Complaint at 3. The

---

[1]Further, the defendants contend that "the allegations of lost reputation from false allegations to a Nebraska state agency do not raise any genuine issue of material fact." Filing No. 66, Defendants' Motion for Partial Summary Judgment at 1. The court finds that those allegations are not a freestanding claim but merely provide factual support for the allegations that the plaintiffs were unfairly targeted by the defendants. Accordingly, the defendants' motion for summary judgment on the purported "claim" will be denied.

plaintiffs allege that defendants handcuffed them and their guests for three hours while ransacking the house and breaking items of personal property. *Id.* In addition, plaintiffs contend that the defendants ripped holes in walls, destroyed glass tables, and tore up family pictures (while making crude comments about pictures of Melanie McCurry in a bathing suit) and assert that items seized were never returned. *Id.* at 3-4. Further, plaintiffs assert that City of Omaha law enforcement officers and employees retaliated against them by allegedly firing their foster son and filing false complaints with the Department of Social Services. *Id.* at 4-5. Robert McCurry testified in his deposition that the police officers tore up his house and damaged his furniture in executing the warrant. Filing No. 65 (Doc # 65-6, Page ID # 232).

Evidence submitted by the parties in support of and in opposition to the motion shows that the search warrant states on its face that it is "based upon the sworn affidavit and application of issuance of a search warrant of DETECTIVE SWANSON, Jerald # 1566 dated the 1st date of August, 2007." Filing No. 67, Index of Evid., Ex. 1, Affidavit of Jerald R. Swanson ("Swanson Aff."), Attachment No. 2, Search Warrant at 1 (Doc # 67-1, Page ID # 263). Detective Swanson's affidavit and application describes with particularity six items, including firearms, that were to be the subject of the search. *Id.*, Swanson Aff., Attachment No. 1, affidavit and application for issuance of a search warrant at 3. The search warrant itself, however, contains no description or list of property. *Id.*, Swanson Aff., Attachment 2, Search Warrant at 1. In the space provided for a description of the property, only the address and description of the place to be searched are set out. *Id.* The warrant does not indicate that any affidavit is attached. *Id.*

2

In the affidavit in support of the search warrant, Officer Swanson also detailed reports of gang members in and around the McCurry home, and noted that weapons and spent ammunition had been found in the alley behind the house. *Id.,* Ex. 1, Swanson Aff., Attachment 1 at 4. Sergeant Swanson also described several incidents that involved Christopher McCurry and firearms that were either stolen or defaced (serial numbers removed). *Id.* at 6. Also, Swanson stated he observed Corleone McCurry consorting with known gang members. *Id.* at 8. The affidavit and application were presented to and signed by Douglas County, Nebraska. *Id.,* Ex. 1, Swanson Aff. at 2.

Officer Swanson states in his affidavit the omission of the listed items from the warrant was inadvertent. *Id.* Further, he states that the policies and practices of the Omaha Police Department require items targeted in a search to be listed on the warrant itself. *Id.* Officer Swanson states that Robert McCurry received a copy of the inventory of items seized in the search. *Id.,* Swanson Aff. at 13, Attachment No. 3, receipt at 2 (Doc # 67-1, Page ID # 266); *see also* Filing No. 65, Index of Evid., Ex. 2, Police report at 4. (Doc # 65-2, Page ID # 216). In affidavits submitted in opposition to the city's motion, the plaintiffs state that they were not provided or shown the search warrant at the time of the search. Filing No. 75, Index of Evid., Ex. 1, Affidavit of Robert McCurry, Ex. 2, Affidavit of Melanie McCurry, Ex. 3, Affidavit of Christopher McCurry at 1. The plaintiffs dispute Officer Swanson's contention that the affidavit was present at the time of the search. *Id.*

The evidence shows law enforcement officers found and seized weapons, including a weapon with a defaced serial number, and drug-related paraphernalia from the home. Filing No. 65, Index of Evid., Ex. 7, inventory. Christopher McCurry was arrested at the conclusion of the search, after officers found a weapon concealed in the rafters of his

bedroom. Filing No. 65, Ex. 2, police report. He was later indicted in this court on a charge of possession of a defaced weapon. Filing No. 65, Ex. 3, Indictment. His defense counsel moved to dismiss the evidence seized in the search on the ground that the warrant was fatally defective. Filing No. 65, Ex. 4. The United States Attorney later dismissed the charges against Christopher McCurry. Filing No. 65, Index of Evid., Ex. 3, motion to dismiss.

The evidence also shows that the plaintiffs had previously reported information to the City of Omaha's gang unit about possible criminal activity in the park by their house. Filing No. 65, Index of Evid., Ex. 5, Deposition of Robert McCurry at 2. Plaintiffs had also complained about police brutality or harassment. *Id.*

## II. DISCUSSION

### A. Law

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The burden of establishing that no genuine issue of material fact exists is on the moving party. Fed.R.Civ.P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005) (stating that "[t]he

4

moving party bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law"). Therefore, if the moving party does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987). Once the moving party has met its burden, the nonmoving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Singletary*, 423 F.3d at 890.

The law imposes civil liability on any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. The first clause of the Amendment provides an overriding check on criminal investigations by the government, prohibiting all unreasonable searches and seizures and the second clause explains the process for obtaining a warrant to authorize a search. *See Soldal v. Cook County*, 506 U.S. 56, 63 (1992) (involving reasonableness clause); *Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987) (involving warrant clause). A search that satisfies the warrant clause will generally, but not invariably, satisfy the

5

reasonableness clause. *See* Richards v. Wisconsin, 520 U.S. 385, 395 (1997) (noting that despite the issuance of a warrant, "the reasonableness of the officers' decision . . . must be evaluated as of the time [of the search]"). Although a search of a residence or building without a warrant is "presumptively unreasonable," it will not invariably violate the reasonableness clause because "exigent circumstances" or consent may excuse the necessity of a warrant. Payton v. New York, 445 U.S. 573, 587 (1980).

"'The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.'" Groh v. Ramirez, 540 U.S. 551,565 (2004) (quoting Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 (1984)). The presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant. *Id.* at 559. However, the particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail. *Id.* at 557. Unless the particular items described in the affidavit are also set forth in the warrant itself, or the affidavit is incorporated by reference in the warrant <u>and</u> the affidavit is present at the search, "there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Id.* at 560. Accordingly, "[t]he fact that the application adequately described the 'things to be seized' does not save the warrant" from the risk of facial invalidity because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 557. Nevertheless, a court may accept a warrant that references a supporting application or affidavit if the warrant uses appropriate words of incorporation, <u>and</u> if the supporting document

6

accompanies the warrant.  *Id.* at 558-59 (emphasis added); *United States v. Curry*, 911 F.2d 72, 77 (8th Cir. 1990) (holding that a description in the supporting affidavit can supply the requisite particularity if:  (a) the affidavit accompanies the warrant, and (b) the warrant uses suitable words of reference which incorporates the affidavit therein); *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008).

The purpose of the particularity requirement is not limited to the prevention of general searches, but is to assure "'the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'"  *Groh*, 540 U.S. at 561 (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)).  Although the Fourth Amendment does not require an officer to serve a search warrant before executing it, a decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search.  *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms,*  452 F.3d 433, 443 (6th Cir. 2006).

The existence of probable cause for a search warrant depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2004).  When an issuing judge relies "solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."  *Id.*  The court should give considerable deference to the issuing judge's determination of probable cause.  *United States v. Dishman*, 377 F.3d 809, 811 (8th Cir. 2004).

"It is elementary Fourth Amendment law that even valid warrants must be executed in a reasonable manner." *Dalia v. United States*, 441 U.S. 238, 257-58 (1979). Although how best to proceed in performing a search is generally left to the discretion of officers executing a warrant, possession of a search warrant does not give the executing officers a license to proceed in whatever manner suits their fancy. *Id.* The manner in which a warrant is executed is always subject to judicial review to ensure that it does not traverse the general Fourth Amendment proscription against unreasonableness. *Id.* The "when" and "how" of otherwise legitimate law enforcement actions may always render such actions unreasonable. *Zurcher v. Stanford Daily*, 436 U.S. 547, 559-60 (1978); see also *Hummel-Jones v. Strope*, 25 F.3d 647, 653 (8th Cir. 1994) (holding the defendant police officer's search unreasonable, despite the presence of a valid warrant).

The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law. *Pearson v. Callahan*, 555 U.S.223, —,129 S. Ct. 808, 823 (2009). To overcome a defendant's claim of qualified immunity, a plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)); *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001). The qualified immunity defense is not available in an action to enjoin future conduct or in an action against a municipality. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998).

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law," however, and "if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Turney v. Waterbury*, 375 F.3d 756, 759-760 (8th Cir. 2004) (quotations omitted); *see Iqbal*, 129 S. Ct. at 1947 (noting that "determining whether there is a genuine issue of material fact at summary judgment is a question of law, but it is a legal question that sits near the law-fact divide"). A successful claim of qualified immunity will generally "present 'purely legal' issues capable of resolution 'with reference only to undisputed facts.'" *Ortiz*, 131 S. Ct. at 892 (noting that "[c]ases fitting that bill typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law"); *see, e.g., Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (stating that "typically, the issue is whether the federal right allegedly infringed was clearly established"); *Johnson v. Jones*, 515 U.S. 304, 313-18 (reaffirming that summary judgment determinations are appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity, not when the record raises genuine issues of fact); *Pearson*, 129 S. Ct. at 819 (noting that the qualified immunity procedure is of little use in fact-bound cases).

Even if a defendant frames an issue in terms of qualified immunity, the court should determine whether he is simply arguing that the plaintiff offered insufficient evidence to create a material issue of fact. *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008). The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. *Id.* If there is a genuine dispute concerning predicate facts

9

material to the qualified immunity issue, the defendant is not entitled to summary judgment. *Id.*

An officer relying on a warrant that is "'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid" is not entitled to qualified immunity. *Groh*, 540 U.S. at 565 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh*, 540 U.S. at 563-64. An officer who prepares an invalid warrant may not argue that he reasonably relied on the issuing judge's finding that the warrant contained an adequate description of the things to be seized and was therefore valid. *Id*. at 564, 565 n.8 (noting that the same standard of objective reasonableness applied in *Leon*, 468 U.S. at 923, with respect to the "good faith" exception to the exclusionary rule in a criminal case, defines the qualified immunity accorded an officer); *see also Malley v. Briggs*, 475 U.S. 335, 346 n.9 (noting that if a request for a warrant is outside the range of professional competence expected of an officer, "[t]he officer cannot excuse his own default by pointing to the greater incompetence of the magistrate.").

"Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). A municipality may be held liable under § 1983 for a rights violation when either the municipality had an unlawful policy or practice that caused the rights violation, or a municipal "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). A municipality can be held "liable

10

under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees." *City of Canton,* 489 U.S. at 380; *Turney*, 375 F.3d at 762 (noting that "failure to properly train employees is one way in which an entity can exhibit deliberate indifference toward the rights of others.").

    B. Analysis

        1. The Warrant

The court first finds that the warrant is plainly invalid on its face. Like the warrant at issue in *Groh*, this warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items; rather, in the space set aside for a description of the items to be seized, the warrant referred to the address of the place to be searched. Although it contains the language that it was "based upon the sworn affidavit," it does not contain any indication that the affidavit was attached to the warrant and presented to the judge. Without such express indication, it is at least theoretically possible that the issuing judge agreed that the scope of the search should be as broad as the affiant's request. *See Groh,* 540 U.S. at 560-61 (noting, in an application seeking authority to search for weapons, "conceivably, the Magistrate might have believed that some of the weapons mentioned in the affidavit could have been lawfully possessed and therefore should not be seized"). Further, there are disputed issues of fact with respect to whether the warrant and affidavit were presented to the plaintiffs during the search, so as to inform the plaintiffs of the limits of the officers' power to search. The McCurrys testified they were not shown either the warrant or the affidavit. The evidence shows there is a genuine issue of material fact with respect to the reasonableness of the search, notwithstanding the invalidity of the warrant. The validity of the warrant is a factor to consider in the reasonableness analysis.

The court finds that defendant Swanson is not entitled to qualified immunity. There are disputed issues of material fact on the issue of whether it was objectively reasonable for the other officers to rely on the warrant as well as whether the conduct of the officers in effecting the search was reasonable. Accordingly, the defendants' motion for summary judgment on the basis of qualified immunity will be denied.

2. Municipal Liability

The plaintiffs have not presented any evidence to counter the defendants' evidence that Officer Swanson's fatal omission of the targeted property in the warrant was not an act taken pursuant to a custom or policy of the city. No named defendants have been shown to be policymakers of the City. Accordingly, the defendants' motion for summary judgment will be granted with respect to defendant City of Omaha.

THEREFORE, IT IS ORDERED:

1. The plaintiffs' motion for partial summary judgment on the issue of the validity of the warrant (Filing No. 63) is granted.

2. The defendants' motion for summary judgment (Filing No. 66) is granted with respect to defendant City of Omaha and denied in all other respects.

3. The plaintiffs' claims against the City of Omaha are hereby dismissed.

DATED this 31st day of August, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.